UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

--------------------------------------X

BRYAN LEE CLARKE,

               *Plaintiff*,

   -against-                       **MEMORANDUM AND ORDER**

                                         21-cv-1257(KAM)

COMMISSIONER OF SOCIAL SECURITY,

               *Defendant*.

--------------------------------------X

**KIYO A. MATSUMOTO, United States District Judge:**

       Plaintiff Bryan Lee Clarke appeals the final decision of the Commissioner of the Social Security Administration (the "Commissioner"), which found Plaintiff not disabled and thus not entitled to disability insurance benefits ("benefits") under Title II of the Social Security Act ("the Act"). Before the Court are Plaintiff's motion for judgment on the pleadings and the Commissioner's cross-motion for judgment on the pleadings. For the reasons set forth below, Plaintiff's motion is **GRANTED** and the Commissioner's cross-motion is **DENIED**, and the case is remanded for further proceedings consistent with this Memorandum and Order.

**Background**

The parties have filed a joint statement of stipulated facts detailing Plaintiff's medical history and the administrative hearing testimony, which the Court incorporates by reference. (*See* ECF No. 17, Joint Stipulation of Facts ("Joint Stip.").)  Here, the Court briefly recounts the facts relevant to the instant motions.

Plaintiff was born in 1987 and previously worked as a construction worker. (ECF No. 19, Administrative Transcript ("Tr."), at 68.)  He filed an application for disability insurance benefits under Title II of the Act on October 29, 2018. (Stip. at 3.)  Plaintiff alleged disability beginning May 5, 2018, due to a left shoulder injury, neck injury, right shoulder injury, left knee injury, left ankle injury, left hip injury, lumbar spine injury, and cervical spine injury. (*Id.*)

Administrative Law Judge Sandra M. McKenna (the "ALJ") determined Plaintiff had the "severe impairments" of "cervical and lumbar disc herniations/bulges status post-surgery, left knee tear status post-surgery, right shoulder tear, left shoulder tear, and obesity," which significantly limited his ability to perform basic work activities. (Tr. at 57.)  The ALJ found Plaintiff was not disabled because he maintained the residual functional capacity ("RFC") to perform other jobs that exist in the national economy in significant numbers. (*Id.* at

2

59-68.)  Plaintiff appealed his decision to the Appeals Council. (Stip. at 8.)  On January 8, 2021, the Appeals Council denied review of the ALJ's decision, rendering it the final decision of the Commissioner.  (*Id.* at 1.)

Plaintiff initiated the instant action on March 3, 2021, (*see* ECF No. 1, Complaint ("Compl.")), and the Court issued a scheduling order on March 10, 2021. (See ECF No. 4, Scheduling Order.)  By January 3, 2022, the entire set of both parties' motion papers was filed. (See ECF Nos. 14, Plaintiff's Memorandum of Law in Support of Plaintiff's Motion for Judgment on the Pleadings ("Pl. Mem."); 15, Defendant's Memorandum of Law in Support of Defendant's Cross-Motion for Judgment on the Pleadings and in Opposition to Plaintiff's Motion ("Def. Mem."); 16, Plaintiff's Reply Memorandum of Law in Support of Plaintiff's Motion for Judgment on the Pleadings ("Pl. Reply Mem.").)[1]

## **Standard of Review**

A claimant who is unsuccessful in applying for disability benefits under the Act may seek judicial review in federal court of the Commissioner's denial of their benefits "within sixty days after the mailing . . . of notice of such decision or within such further time as the Commissioner of Social Security may allow."  42 U.S.C. §§ 405(g), 1383(c)(3).

---

[1] Defendant did not file a reply brief.

"A district court may set aside the Commissioner's determination that a claimant is not disabled only if the factual findings are not supported by substantial evidence or if the decision is based on legal error." *Burgess v. Astrue*, 537 F.3d 117, 120 (2d Cir. 2008) (internal quotation marks omitted) (quoting *Shaw v. Chater*, 221 F.3d 126, 131 (2d Cir. 2000)).

"Substantial evidence is more than a mere scintilla" and must be relevant evidence that a "reasonable mind might accept as adequate to support a conclusion." *Halloran v. Barnhart*, 362 F.3d 28, 31 (2d Cir. 2004) (citing *Richardson v. Perales*, 420 U.S. 389, 401 (1971)) (internal quotation marks omitted). If there is substantial evidence in the record to support the Commissioner's factual findings, those findings must be upheld. 42 U.S.C. § 405(g). Inquiry into legal error requires the Court to ask whether "the claimant has had a full hearing under the [Commissioner's] regulations and in accordance with the beneficent purposes of the [Social Security] Act." *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009) (second alteration in original) (internal quotation marks omitted) (quoting *Cruz v. Sullivan*, 912 F.2d 8, 11 (2d Cir. 1990)). The reviewing court does not have the authority to conduct a *de novo* review and may not substitute its own judgment for that of the ALJ, even when it might have justifiably reached a different

result.  *Cage v. Comm'r of Soc. Sec.*, 692 F.3d 118, 122 (2d Cir. 2012).

A claimant must be "disabled" within the meaning of the Act to receive benefits.  *See* 42 U.S.C. §§ 423(a), (d).  A claimant qualifies as disabled when he is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  *Id.* § 423(d)(1)(A); *Shaw*, 221 F.3d at 131–32.  The impairment must be of "such severity" that the claimant is unable to do his previous work or engage in any other kind of substantial gainful work.  42 U.S.C. § 423(d)(2)(A).

An ALJ must follow a five-step sequential evaluation process to determine whether a claimant meets the Act's definition of disabled.  20 C.F.R. § 404.1520.  The Commissioner's approach can be summarized as follows:

> [I]f the Commissioner determines (1) that the claimant is not working, (2) that he has a 'severe impairment,' (3) that the impairment is not one [listed in Appendix 1 of the regulations] that conclusively requires a determination of disability, and (4) that the claimant is not capable of continuing in his prior type of work, the Commissioner must find him disabled if (5) there is not another type of work the claimant can do.

*Burgess*, 537 F.3d at 120 (quoting *Green-Younger v. Barnhart*, 335 F.3d 99, 106 (2d Cir. 2003)); *accord* 20 C.F.R. § 404.1520(a)(4).

The claimant has the "general burden of proving . . . his or her case" in steps one through four of the sequential five-step framework. *Burgess*, 537 F.3d at 128 (internal quotation marks and citations omitted). At the fifth step, the burden of proof shifts from the claimant to the commissioner to show, in light of the claimant's residual functional capacity, age, education, and work experience, that claimant is able to engage in gainful employment within the national economy. *Sobolewski v. Apfel*, 985 F. Supp. 300, 310 (E.D.N.Y. 1997). Additionally, "because a hearing on disability benefits is a non-adversarial proceeding, the ALJ generally has an affirmative obligation to develop the administrative record." *Burgess*, 537 F.3d at 128 (internal quotation marks and citations omitted).

During this five-step process, the ALJ must consider whether "the combined effect of all of [a claimant's] impairments" would be of sufficient severity to establish eligibility for Social Security benefits. 20 C.F.R. § 404.1523(c). When considering the combined effect of impairments, the ALJ must factor in both severe and non-severe impairments. *Id.* § 416.945(a)(2).

"The Commissioner must consider the following in determining a claimant's entitlement to benefits: '(1) the

objective medical facts [and clinical findings]; (2) diagnoses or medical opinions based on such facts; (3) subjective evidence of pain or disability . . . ; and (4) the claimant's educational background, age, and work experience.'" *Balodis v. Leavitt*, 704 F. Supp. 2d 255, 262 (E.D.N.Y. 2001) (quoting *Brown v. Apfel*, 174 F.3d 59, 62 (2d Cir. 1999)) (alterations in original).

Finally, a federal district court, when reviewing decisions of the SSA, is authorized to order further proceedings when appropriate. "The court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). Remand is warranted where "there are gaps in the administrative record or the ALJ has applied an improper legal standard." *Rosa v. Callahan*, 168 F.3d 72, 82-83 (2d Cir. 1999) (quoting *Pratts v. Chater*, 94 F.3d 34, 39 (2d Cir. 1996) (internal quotation marks omitted). Remand is particularly appropriate where further findings or explanations will clarify the rationale for the ALJ's decision. *Pratts*, 94 F.3d at 39. If the record before the Court provides "persuasive proof of disability and a remand for further evidentiary proceedings would serve no purpose," the Court may reverse and remand solely for the calculation and payment of benefits. *See, e.g., Parker v. Harris,* 626 F.2d 225,

235 (2d Cir. 1980); *Kane v. Astrue*, 942 F. Supp. 2d 301, 314 (E.D.N.Y. 2013).

<u>**Discussion**</u>

### I.  The ALJ's Disability Determination

Using the five-step sequential process described above, the ALJ determined at step one that Plaintiff had not engaged in substantial gainful activity since May 5, 2018.  (Tr. at 57.)

At step two, the ALJ concluded that Plaintiff had the following severe impairments: "cervical and lumbar disc herniations/bulges status post-surgery, left knee tear status post-surgery, right shoulder tear, left shoulder tear, and obesity." (*Id.*)  The ALJ found that Plaintiff suffered symptoms consistent with carpal tunnel syndrome in his left wrist but that it was a non-severe impairment because there was no evidence that it imposed significant functional limitations. (*Id.* at 58.)  The ALJ also classified Plaintiff's alleged ankle pain as a non-medically determinable impairment because it was not subject to laboratory testing.  (*Id.*)

At step three, the ALJ found that Plaintiff did not have an impairment or a combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1.  (Tr. at 58); 20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526.  Specifically, the

8

ALJ determined that Plaintiff's impairments did not meet the criteria of Listings 1.02 and 1.04. (Tr. at 58-59.) First, the ALJ considered Listing 1.02, which concerns the major dysfunction of a joint. (*Id.* at 58.) The ALJ found that Plaintiff did not meet the Listing 1.02 criteria that requires an individual to be unable to sustain "a reasonable walking pace over a sufficient distance to be able to carry out activities of daily living." (*Id.*) The ALJ also found that Plaintiff did not meet the Listing 1.02 criteria of "involvement of one major peripheral joint in each upper extremity, resulting in inability to perform fine and gross movements effectively." (*Id.*)

Next, the ALJ considered Listing 1.04, which concerns spinal disorders. To qualify for Listing 1.04, an individual must exhibit the following criteria:

> (A) Evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine), or (B) spinal arachnoiditis, confirmed by an operative note or pathology report of tissue biopsy, or by appropriate medically acceptable imaging, manifested by severe burning or painful dysesthesia, resulting in the need for changes in position or posture more than once every 2 hours, or (C) lumbar spinal stenosis resulting in pseudoclaudication, established by findings on appropriate medically acceptable imaging manifested by chronic non-radicular pain and weakness, and resulting in inability to ambulate effectively

20 C.F.R. Pt. 404, Subpt. P, App. 1.   The ALJ found "no evidence" that Plaintiff met any of the criteria for Listing 1.04(A)-(C).   (Tr. at 58-59.)

Next, the ALJ determined that Plaintiff had the residual functional capacity to perform sedentary work with the following exceptions: "occasionally reach overhead with the bilateral upper extremities; climb ramps, stairs, ladders, ropes, and scaffolds occasionally; and balance, stoop, kneel, crouch, and crawl occasionally."   (*Id.* at 59.)

At step four, the ALJ determined that based on the above RFC determination, Plaintiff could not perform his past relevant work as a construction worker.   (*Id.* at 68.)

At step five, the ALJ found that there were jobs that existed in significant numbers in the national economy that Plaintiff could perform despite his restrictions.   (*Id.* at 69.) The ALJ consulted a vocational expert to determine whether there were jobs in the national economy that Plaintiff could perform considering his age, education, work experience, and residual functional capacity.   (*Id.*)   The vocational expert testified that Plaintiff would be able to perform the requirements of representative occupations such as assembler, table worker, and preparer.   (*Id.*)   Thus, the ALJ concluded Plaintiff could make a successful adjustment to other work that exists in the national

economy and was therefore not disabled within the meaning of the Act, as defined in 20 C.F.R. § 404.1520(g).   (*Id.*)

## II.  Analysis

Plaintiff contends remand is warranted because (1) the ALJ failed to properly evaluate Listing 1.04(A) at step three, and (2) the ALJ's RFC determination was not supported by substantial evidence.  (ECF No. 16, Pl. Mem.)   For the reasons below, the Court finds the ALJ failed to provide adequate analysis for concluding Plaintiff did not meet or equal Listing 1.04(A) at step three, and remands the case without analyzing steps four or five.

### A. Plaintiff Provided Evidence to Support a Colorable Claim of Disability Under Listing 1.04(A)

At step 3, the plaintiff bears the burden to prove that he meets the requirements of a Listing.   20 C.F.R. § 404.1520(d).   If the plaintiff provides evidence to support a colorable finding of disability under one of the Listings, then the ALJ "must provide an explanation of his reasoning as to why he believes the requirements are not met and explain the credibility determinations and inferences he drew in reaching that conclusion."  See *Ryan v. Astrue*, 5 F. Supp. 3d 493, 509 (S.D.N.Y. 2014) (citing *Berry v. Schweiker*, 675 F.2d 464, 469 (2d Cir. 1982)).

Plaintiff argues that he submitted medical evidence sufficient to support a colorable claim that he had a spinal disorder consistent with Listing 1.04(A). (Pl. Mem. at 12, 16-19.) As explained above, to qualify for Listing 1.04(A), a plaintiff must demonstrate (1) a disorder of the spine, (2) resulting in nerve root compression, (3) limitation of motion, (4) motor loss, and (5) sensory or reflex loss. 20 C.F.R. Pt. 404, Subpt. P, App. 1.

First, Plaintiff argues he provided sufficient evidence to indicate he had a spinal disorder. (Pl.'s Mem. at 12.) On June 14, 2018, Plaintiff underwent an MRI revealing Herniated Nucleus Pulposus (HNP) at his C2-3 and C7-T1 and bulges at C3-4, C4-5, and C5-6 levels. (Tr. at 741.) A subsequent MRI showed disc desiccation involving all cervical discs. (Tr. at 665.) HNP is listed explicitly as a spinal disorder that qualifies for Listing 1.04(A). 20 C.F.R. Pt. 404, Subpt. P, App. 1.

Second, Plaintiff claims his spinal disorder was characterized by nerve-root compression. (Pl. Mem. at 13-14.) Plaintiff provided two examinations by Dr. Alexander Zhuravkov, which returned positive diagnoses of axial compression. (Tr. 740-43.) Two examinations by Dr. Stelios Koutsoumbelis indicate that Plaintiff had "C8 nerve root compression." (Tr. at 891-93.) Dr. Sasan Azar's examination found an "impingement of the

12

right C8 exiting nerve root." (Tr. at 895.) Plaintiff also references a cervical epidural steroid injection by Dr. Zhuravkov, where "flow dynamics revealed decreased flow along the existing nerve roots bilaterally . . . this seemed to affect the C5 and C6 nerve roots bilaterally." (Tr. at 764.)

Third, Plaintiff asserts that the medical evidence establishes that his nerve-root compression limited his range of motion. (Pl. Mem. at 14-15.) The notes from Plaintiff's physical therapy appointments are replete with evaluations that Plaintiff could not exercise a full range of motion. (*See* Tr. at 460, 479-611.) Dr. Camari Wallace's examination revealed a restricted range of motion upon extension and lateral rotation. (Tr. at 767.) Nurse Practitioner Daniah Jean-Francois's examination showed a decreased range of motion upon lumbar flexion and extension and a limited range of motion in the lower extremity. (Tr. at 688-89.) Consultative Examiner Dr. Chaim Shtock found that Plaintiff had limited motion in his neck, wrists, and left shoulder. (Tr. at 617.) Dr. Alexandre De Moura's tests noted Plaintiff was unable to turn "parts of his body and/or head." (Tr. at 888.)

Fourth, Plaintiff contends that his condition resulted in "motor loss," defined as "atrophy with associated muscle weakness or muscle weakness." (Pl. Mem. at 14); 20 C.F.R. Pt. 404, Subpt. P, App. 1. Plaintiff's physical therapy evaluation,

however, revealed 4/5 strength in the neck and upper and lower abdominal.[2]   (Tr. at 480.)   Dr. Yong Chi noted that Plaintiff demonstrate 4/5 strength in the bilateral shoulders, left knee, and left ankle.   (Tr. at 462.)   Dr. Wallace recorded Plaintiff's strength at 4+/5 in the lower extremity and assessed a positive straight leg raising test.   (Tr. at 767, 769.)

Finally, Plaintiff argues his motor loss was accompanied by sensory and reflex loss.   (Pl. Mem. at 14.) Plaintiff cites medical results from pinprick and light touch tests: Dr. Chi's test demonstrated decreased response in the right deltoid, bicep, median, ulnar, tibial anterior, and peroneus nerve distributions.   (Tr. at 463.)   Dr. De Moura's tests indicated decreased response in the left C6 distribution, absent the left brachial radial reflex.   (Tr. at 629, 633.)

Reviewing the evidence in the record, this Court concludes Plaintiff provided sufficient evidence to support a colorable claim of disability under Listing 1.04(A).   *See Ryan v. Astrue*, 5 F. Supp. 3d 493, 509 (S.D.N.Y. 2014) (holding a plaintiff need not provide "overwhelming" evidence that they meet a Listing to present a colorable case).   As such, the ALJ must explain "why he believes the requirements are not met and explain the credibility determinations and inferences he drew in

---

[2] The Court notes that a 4/5 muscle strength grade results can be defined as "[m]uscle activation against some resistance, full range of motion."   Usker Naqvi; Andrew l. Sherman, *Muscle Strength Grading*, NATIONAL LIBRARY OF MEDICINE, https://www.ncbi.nlm.nih.gov/books/NBK436008/

reaching that conclusion." *Id.* at 509 (internal citation omitted).

### B. The ALJ Failed Sufficiently to Explain Why Plaintiff Did Not Meet or Medically Equal Listing 1.04

The ALJ must properly consider whether the evidence presented by the plaintiff is sufficient to support a disability claim under the relevant Listing. This explanation must be more than a bald assertion or "recitation of the standard." *Torres v. Colvin*, No. 14-cv-479S (WMS), 2015 WL 4604000, at *4 (W.D.N.Y. 2015). The ALJ's analysis must "build an accurate and logical bridge from the evidence to [his/her] conclusion." *Hamedallah ex. Rel. E.B. v. Astrue*, 876 F. Supp. 2d 133, 142 (N.D.N.Y. 2012) (internal quotation marks omitted). As a general principle, the ALJ's analysis must be thorough enough to enable judicial review of the ALJ's decision and provide Plaintiff with a thoughtful explanation for why the Plaintiff's claim was denied. *See Hamedallah,* 876 F. Supp. 2d at 142; *Beers v. Comm'r of Soc. Sec.*, 449 F. Supp. 3d 96, 102 (W.D.N.Y. 2020); *Cecelia J. v. Comm'r of Soc. Sec.*, No. 19-cv-1483 (HBS), 2021 WL 431673, at *3 (W.D.N.Y. 2021) ("It is well-established that an ALJ must express the reasons underlying his findings with enough clarity to afford meaningful judicial review.") (internal quotation marks and citation omitted); *Nashir v. Berryhill*, No. 18-cv-767 (HKS), 2020 WL 1445069, at *5 (W.D.N.Y. 2020)

("Plaintiff is clearly owed a more substantive explanation of why he did not meet the Listing 1.04A."). After reviewing the evidence in the record and the ALJ's decision, this Court concludes that the ALJ's explanation for why Plaintiff did not meet Listing 1.04(A) was insufficient.

In the instant case, the ALJ's entire step three determination consists of a single sentence that there was "no evidence" Plaintiff met any of the requirements for Listings 1.04(A)-(C). (Tr. at 58.) Such a brief statement is a mere "conclusory observation" that fails to discuss "the crucial factors in any determination with sufficient specificity to enable the reviewing court to decide whether the determination is supported by substantial evidence." *Pamela P. v. Saul*, No. 19-cv-575 (DJS), 2020 WL 2561106, at *5 (N.D.N.Y. 2020) (internal ellipsis and quotation marks omitted). The ALJ's brevity prevents the Court from reviewing whether and how the ALJ evaluated the various medical evidence proffered by Plaintiff.

An ALJ's unexplained step three conclusion may nevertheless be upheld if other parts of the opinion demonstrate that their step three decision was supported by substantial evidence. *Berry*, 675 F.2d at 469. Courts, however, refrain from inferring the ALJ's logic when credibility determinations and inference drawing is required of the ALJ. *Id.* Here, the

16

ALJ does not discuss all the evidence presented by Plaintiff, and the evidence discussed by the ALJ "only relate[d] to the plaintiff's RFC determination and [did] not provide rationale as to how the findings connect to specific criteria in Listing 1.04(A) under step three of the analysis." *Ortiz v. Saul*, 19-cv-2316 (KAM), 2020 WL 7699304, at *9 (E.D.N.Y. 2020); s*ee also Lamar v. Berryhill*, No. 17-cv-1019 (MPS), 2018 WL 3642656, at *8 (D. Conn. 2018) (remanding case where the court was "largely left to speculate how the evidence discussed in the ALJ's RFC rationale applies in the Listings context, as the ALJ did not make the necessary findings on issues pertinent to his determinations at step three of the disability analysis."). For instance, the ALJ references medical records with evidence of Plaintiff's nerve root compression several times during the RFC determination, but does not examine the evidence in the context of Listing 1.04(A) or provide any analysis contrary to Plaintiff's claim of C-8 nerve root compression. (Tr. at 61-65.) As such, it is improper for this Court to evaluate the grounds upon which the ALJ made the Listing 1.04(A) determination. *Beers*, 449 F. Supp. 3d at 102 ("Due to the lack of explanation, the Court is unable to meaningfully review the ALJ's determination at step three of the sequential analysis.").

On appeal, the Commissioner connects various examination findings and medical opinions to explain why

Plaintiff failed to meet or equal Listing 1.04(A).  (ECF No. 20, Def. Mem. at 5-16.)  The Commissioner, however, cannot cure the ALJ's lack of reasoning by providing his own.  *See Ortiz,* 2020 WL 7699304, *at \*8; Newbury v. Astrue*, 321 F. App'x 16, 18 (2d Cir. 2009) (summary order) (remanding because a "reviewing court may not accept appellate counsel's post hoc rationalizations for agency action.") (internal quotation marks omitted) (citing *Snell v. Apfel*, 177 F3d 128, 134 (2d Cir. 1999)); *see generally SEC v. Chenery Corp.*, 318 U.S. 80, 87 (1943).  It is not the place of this Court to evaluate whether Plaintiff met Listing 1.04(A), or to speculate what the ALJ's reasoning was when the ALJ made the Listing determination.  *Ortiz*, 2020 WL 7699304, at \*9 n.1 ("It is not the function of the Court to weigh the medical evidence of record to determine whether [the Listing] was met . . . It is the ALJ's job to make this determination in a way a court can follow." (citations omitted)); *see Ryan*, 5 F. Supp. 3d at 508 ("While the Commissioner is correct that there is . . . conflicting evidence regarding plaintiff's motor functions during testing . . . , it is the obligation of the ALJ to explicitly reconcile this conflicting evidence by evaluating whether plaintiff meets or medically equals the requirements of Listing 1.04A.").

The ALJ's conclusory statement, standing alone, is "inadequate to substitute for specific findings in view of the

fact that plaintiff has at least a colorable case for application of Listing 1.04(A)." *Cherico v. Colvin*, No. 12-cv-5734 (MHD), 2014 WL 3939036, at *28 (S.D.N.Y. 2014). The ALJ's opinion does not afford Plaintiff substantive reasons for the Listing 1.04(A) determination and is insufficient to facilitate adequate judicial review by this Court.

### C. Remand is Appropriate for Clarification of Listing 1.04(A)

Remand is appropriate when an ALJ's decision renders a reviewing court unable to determine that the "ultimate decision that Plaintiff failed to satisfy Listing 1.04(A) was supported by substantial evidence." *McIntosh v. Berryhill*, No. 17-cv-5403 (ER) (DF), 2018 WL 4376417, at *18 (S.D.N.Y. 2018). District courts may remand when an ALJ substitutes "boilerplate language" for "meaningful explanations." *Ryan*, 5 F. Supp. 3d at 508. It is "particularly important for the ALJ to specifically address evidence with respect to the step three analysis because a claimant whose condition meets or equals that of a Listing is deemed disabled *per se* and is eligible to receive benefits." *Giambrone v. Colvin*, No. 15-cv-05882 (PKC), 2017 WL 1194650, at *18 (E.D.N.Y. 2017).

Accordingly, for the reasons set forth above, this Court remands to give the ALJ the opportunity to further discuss the medical evidence in the context of Listing 1.04(A). Due to

19

the absence of specific findings by the ALJ, this Court is unable to meaningfully review the ALJ's determination and evaluate whether it was based on substantial evidence. *Rowe v. Berryhill*, No. 1:17-cv-00208 (MAT), 2018 WL 4233702 (W.D.N.Y. 2018) ("The ALJ's failure to discuss any of this evidence at step three of the sequential evaluation was erroneous. This Court is, therefore, unable to perform a meaningful review of the ALJ's conclusion that Plaintiff did not meet the requirements of Listing 1.04(A).").

On remand, the ALJ should specifically explain how he weighed conflicting evidence, and explicitly articulate which criteria from Listing 1.04(A) Plaintiff failed to meet based on the evidence. *See Nashir*, 2020 WL 1445069, at *5 ("If, on remand, Plaintiff is once again found not disabled at step three, the ALJ must provide an explanation of what criteria from Listing 1.04A Plaintiff failed to meet in consideration of all of the evidence regarding his severe impairments of the cervical spine.").

### D. Plaintiff's Remaining Claims

As set forth above, Plaintiff has articulated a claim that the ALJ's RFC determination was not based on substantial evidence. (Pl. Mem. at 2-11.) Specifically, Plaintiff contends that the ALJ erroneously discounted part of Dr. Koutsoumbelis's opinion. (*Id.*)

The Court need not address Plaintiff's remaining arguments, which concern additional steps in the sequential disability determination.  On remand, the ALJ must conduct a new evaluation of the evidence, which may alter the current administrative decision.  A new step three analysis may render the credibility determinations in step four unnecessary or change the determinations relevant to Plaintiff's claim. *Morales v. Colvin*, No. 13-cv-06844 (LGS) (DF), 2015 WL 13774790, at *23, (S.D.N.Y. Feb. 10, 2015) (holding a court need not reach additional arguments "given that the ALJ's analysis may change on these points upon remand."); *see, e.g., Ramirez Morales v. Berryhill*, No. 17-cv-06836 (MAT), 2019 WL 1076088, at *5 (W.D.N.Y. 2019) (declining to consider the plaintiff's remaining arguments after remanding due to the ALJ's failure to properly assess the plaintiff's medical records as they pertained to Listing 1.04(A)); *Ortiz*, 2020 WL 7699304 (same); *Bell v. Colvin*, No. 5:15-cv-01160 (LEK), 2016 WL 7017395, at *10 (N.D.N.Y. 2016) (same).

## CONCLUSION

For the aforementioned reasons, Plaintiff's motion for judgment on the pleadings is **GRANTED** and the Defendant's cross-motion for judgment on the pleadings is **DENIED**.  The Clerk of Court is respectfully directed to enter judgment remanding this case and to close the case.


**SO ORDERED.**

DATED:      October 25, 2022
            Brooklyn, New York

                                    _____
                                           /s/
                                    **HON. KIYO A. MATSUMOTO**
                                    United States District Judge

22